2019 IL App (4th) 180704

NO. 4-18-0704

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| AMBROSIA SMITH, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Macoupin County |
| KAITLIN HANCOCK and PAUL ROBERSON, | ) | No. 17L9 |
| Defendants, | ) | |
| (Paul Roberson, Defendant-Appellee). | ) | Honorable |
| | ) | April Troemper, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court, with opinion.
Presiding Justice Holder White and Justice Cavanagh concurred in the judgment and opinion.

**OPINION**

¶ 1      In April 2017, plaintiff, Ambrosia Smith, filed a two-count complaint against defendants, Kaitlin Hancock and Paul Roberson, seeking damages for injuries plaintiff suffered in a September 2016 car accident. In September 2018, Roberson filed a motion for summary judgment. After a hearing, the Macoupin County circuit court granted summary judgment in Roberson's favor, finding Roberson was not the legal cause of plaintiff's injuries.

¶ 2      Plaintiff appeals, asserting the circuit court erred by granting summary judgment in Roberson's favor. We affirm.

¶ 3                              I. BACKGROUND

¶ 4      On September 29, 2016, plaintiff was traveling northbound on Old Route 66 in Macoupin County when she was either stopped or substantially slowed to make a left turn onto a

cross road. Plaintiff had stopped or slowed to permit Roberson's southbound vehicle to pass. While stopped or slowed, plaintiff's vehicle was struck from behind by another northbound vehicle driven by Hancock. Due to the impact from Hancock's vehicle, plaintiff's vehicle was propelled into the southbound lane of traffic where it was struck by Roberson's vehicle.

¶ 5    In her April 2017 complaint, plaintiff alleged one count of negligence against Hancock and one count of negligence against Roberson. Regarding Roberson, plaintiff alleged Roberson had a duty to plaintiff to operate and maintain the vehicle under his control with due regard for plaintiff's safety. She contended Roberson violated that duty by committing one or more of the following acts, some of which in violation of Illinois law: (1) failing to keep a proper lookout; (2) driving his vehicle in a reckless manner (625 ILCS 5/11-503 (West 2016)); (3) driving his vehicle at a speed that (a) was greater than what was reasonable and proper with regard to traffic conditions and the use of the highway or (b) endangered the safety of any person or property (625 ILCS 5/11-601(a) (West 2016)); (4) failing to sound an audible horn warning (625 ILCS 5/12-601 (West 2016)); and (5) failing to reduce speed to avoid colliding with other vehicles (625 ILCS 5/11-601(a) (West 2016)). Plaintiff further asserted that, as a direct and proximate result of one or more of Roberson's aforementioned actions, she sustained severe and permanent injuries when her vehicle was struck by Roberson's vehicle.

¶ 6    Roberson filed a motion for summary judgment in September 2018, asserting no genuine issue of material fact existed on the element of proximate cause and he was entitled to judgment in his favor. In support of his motion, Roberson attached the discovery depositions of himself, plaintiff, and Hancock. He also noted the parties stipulated the video of the accident taken by Jeff Bone's security camera accurately depicted the accident.

¶ 7    In her deposition, plaintiff testified she was going to make a left turn and saw

Roberson's car coming from the other direction. Plaintiff turned on her turn signal and stopped her vehicle to allow Roberson's car to pass before she made her left turn. She did not remember getting hit by either Hancock's or Roberson's vehicles. The next thing she did remember was not being able to lift her head up off the seat and talking with Bone. Plaintiff did not know if Bone's videotape accurately depicted the car accident because she did not recollect the accident.

¶ 8　　　　　In his deposition, Roberson testified he was 70 years old. On the day of the accident, he was driving south from Litchfield and heading back to Staunton where he lived. His wife was in the front passenger's seat. It had previously rained that afternoon.

¶ 9　　　　　While driving home, Roberson observed plaintiff heading northbound. Plaintiff had slowed to almost a stop and had her left turn signal on. Roberson stated he was about a football field or less away when he first observed plaintiff. Roberson was driving between 45 and 50 miles per hour at the time. The posted speed limit was 55 miles per hour. Roberson continued down the road and observed a plume of water, dirt, and dust come up behind plaintiff's car. Roberson assumed someone had hit plaintiff's car. At that point, he started braking. He testified 2½ seconds elapsed between the time he saw the first car hit plaintiff's car and when he hit plaintiff's car. He was positive about the amount of time because he had timed Bone's video 25 times. Roberson stated that, when plaintiff's car was struck by the first car, it spun around 180 degrees and came into his lane. He hit the rear end of plaintiff's car. Roberson noted he only had a second between the time plaintiff's car entered his lane and when his car hit plaintiff's car. When plaintiff's car entered his lane, Roberson locked up his brakes, swung his hand in front of his wife, and braced for impact. He did not have time to stop or sound his horn. He heard his tires sliding on the asphalt and stated he hydroplaned. After Roberson hit plaintiff's car, her car ended up spinning around again and went down in the ditch on the east side of the road.

Roberson ended up in the other ditch on the west side of the road.

¶ 10          Additionally, Roberson explained why he did not swerve. If he had swerved to the left, Roberson would have gone into the northbound lane of traffic and would have hit Hancock's car or the pickup truck at the corner of the intersection. Roberson also noted he did not know what was coming down the northbound lane and someone else could have been coming. If Roberson had swerved to the right, he would have "hit" the ditch because the shoulder was not wide enough. Roberson explained he would have rolled his car trying to avoid plaintiff's car. He also said he would have rolled his car if he had tried to make a right hand turn at the intersection because he was going 45 miles per hour.

¶ 11          Roberson denied having a medical condition that impacted his ability to drive that day. He first answered in the negative when asked if he was wearing his glasses at the time of the accident. Roberson then explained he used to need glasses for reading and driving and was wearing them at the time of the accident. He also noted he had cataract surgery following the date of the accident. Before the cataract surgery, he would see "star busts" when looking at street lights at night. He did not drive much at night before the surgery. After the cataract surgery, he saw normal street lights. According to Roberson, an overcast day did not affect his vision before the cataract surgery, as it was only street lights that caused him problems. Moreover, since having the cataract surgery, he no longer needed glasses for driving.

¶ 12          In Hancock's deposition, she testified she was 17 years old at the time of the accident. She was driving to her father's house when the accident occurred. Hancock did not remember how fast she was driving. Hancock noted the pavement was wet, and she had seen another accident before the one at issue in this case. Before the accident, Hancock looked down for a split second. She did not think plaintiff was turning because she was still moving when

Hancock looked down. When Hancock looked up, plaintiff was there. Hancock immediately reacted and slammed on her brakes. The brakes locked, and Hancock's car skidded. Hancock tried to swerve to avoid hitting plaintiff's car, but she "nipped" plaintiff's car. Hancock did not see Roberson's vehicle before she hit plaintiff's car. She also did not think Roberson did anything wrong in the accident. Hancock did state Roberson could have swerved, but he would have gotten hurt either way. She later agreed any opinion she had as to what Roberson could or could not have done to avoid the accident was complete speculation because she never saw Roberson's car.

¶ 13        Plaintiff filed a response to the summary judgment motion, asserting genuine issues of material fact existed. One of plaintiff's contentions was the jury should be allowed to view the video and make a determination as to the passage of time between the two impacts as well as determine if defendant locked up his brakes or hydroplaned. Plaintiff asserted Roberson had four seconds to react instead of the two he claimed. She also noted Roberson's cataracts.

¶ 14        On September 25, 2018, the circuit court held a hearing on Roberson's summary judgment motion. In granting defendant's motion, the court explained it watched the video with a stopwatch and found 2.3 seconds elapsed from the time Hancock's vehicle hit plaintiff's vehicle to the time Roberson's vehicle hit plaintiff's vehicle. The court noted it would be speculative for anyone to say the outcome would have been different. The court concluded Roberson was not the legal cause of plaintiff's injuries. On September 28, 2018, the court entered a written order, granting Roberson summary judgment in his favor. The written order noted that, even if Roberson breached his duty of care, his conduct was not the legal cause of plaintiff's injuries because it was an unavoidable accident. The court found the sole proximate cause of the accident and plaintiff's injuries was Hancock.

¶ 15 On October 17, 2018, plaintiff filed a stipulation to dismiss with prejudice her cause of action against Hancock. That same day, the circuit court entered a dismissal order, dismissing with prejudice the negligence count against Hancock.

¶ 16 On October 23, 2018, plaintiff filed a timely notice of appeal from the circuit court's order granting Roberson's motion for summary judgment in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). Accordingly, we have jurisdiction of this appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 17 II. ANALYSIS

¶ 18 Plaintiff contends the circuit court erred by granting summary judgment in favor of Roberson because multiple issues of material fact exist. Roberson disagrees, asserting the court properly found plaintiff could not establish his actions were the proximate cause of her injuries.

¶ 19 Section 1005(c) of the Code of Civil Procedure (735 ILCS 5/2-1005(c) (West 2016)) provides summary judgment is proper when the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Our supreme court has emphasized "[s]ummary judgment is a drastic means of disposing of litigation and 'should be allowed only when the right of the moving party is clear and free from doubt.' " *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22 (quoting *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43, 809 N.E.2d 1248, 1256 (2004)). " '[W]here reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact.' " *Beaman*, 2019 IL 122654, ¶ 22 (quoting *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114, 649

N.E.2d 1323, 1326 (1995)). With a summary judgment motion, courts construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Beaman*, 2019 IL 122654, ¶ 22. "A defendant in a negligence suit is entitled to summary judgment if he can demonstrate that the plaintiff has failed to establish a factual basis for one of the required elements of a cause of action for negligence." *Smith v. Tri-R Vending*, 249 Ill. App. 3d 654, 658, 619 N.E.2d 172, 175 (1993). This court reviews *de novo* an appeal from a ruling on a summary judgment motion. *Beaman*, 2019 IL 122654, ¶ 22.

¶ 20        To establish negligence, a plaintiff must set forth facts showing the existence of the following: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by that breach." *Coole v. Central Area Recycling*, 384 Ill. App. 3d 390, 396, 893 N.E.2d 303, 309 (2008). In this case, the circuit court found plaintiff could not establish the proximate cause element. As to that element, this court has stated the following:

> "The proximate-cause element consists of two separate requirements: cause in fact and legal cause. [Citation.] Cause in fact exists when there is a reasonable certainty that a defendant's acts caused the injury or damage. [Citation.] In deciding the aforementioned issue, courts first address whether the injury would have occurred absent the defendant's conduct. [Citation.] Additionally, when multiple factors may have combined to cause the injury, we must consider whether the defendant's conduct was a material element and a substantial factor in bringing about the injury. [Citation.] As to legal cause, we assess foreseeability and consider whether the injury is of a type that a reasonable person would see as a likely result of his conduct. [Citation.] While proximate causation generally presents a question of fact, a court may determine the lack of

proximate cause as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause." (Internal quotation marks omitted.) *Coole*, 384 Ill. App. 3d at 397-98.

¶ 21 Illinois courts have recognized an " 'unavoidable collision.' " *Coole*, 384 Ill. App. 3d at 398. With an unavoidable collision, "the driver on the preferential road is without proximate cause, and the driver's acts or omissions in breach of a duty are not material." *Coole*, 384 Ill. App. 3d at 398. Generally, reviewing courts have found an unavoidable accident under the following circumstances: " '[T]he motorist on the preferential road had the right to expect that the vehicle approaching on the secondary road controlled by a stop sign would obey the stop sign and yield the right-of-way. When the motorist drove into the path of the preferential driver, the circumstances afforded no opportunity to avoid the collision.' " *Coole*, 384 Ill. App. 3d at 398 (quoting *Guy v. Steurer*, 239 Ill. App. 3d 304, 309, 606 N.E.2d 852, 856 (1992)). Moreover, " '[a]n unavoidable collision normally occurs when a motorist is confronted with a sudden swerve into his right-of-way by an approaching vehicle.' " *Coole*, 384 Ill. App. 3d at 398 (quoting *Guy*, 239 Ill. App. 3d at 310). Again, "the driver lacks sufficient time to react and take evasive action." *Coole*, 384 Ill. App. 3d at 398.

¶ 22 In *Coole*, 384 Ill. App. 3d at 392, the defendant was driving a garbage truck southbound on Duncan Avenue, and the decedent was driving eastbound on Clayton Avenue, which had a stop sign at the intersection of Clayton and Duncan Avenues. The defendant estimated he saw the decedent's car two to three seconds before impact. *Coole*, 384 Ill. App. 3d at 393. At that point, the decedent was going through the stop sign, and the defendant was driving somewhere between 35 and 40 miles per hour. *Coole*, 384 Ill. App. 3d at 393. The defendant stated he hardly had time to apply the brakes and only applied them a split second

before impact. *Coole*, 384 Ill. App. 3d at 393. Additionally, the defendant swerved to the left to try to avoid the decedent's car and did not have time to use the horn or air brake. *Coole*, 384 Ill. App. 3d at 393. Last, the defendant did not have a clear view of Clayton Avenue due to trees alongside the road. *Coole*, 384 Ill. App. 3d at 393.

¶ 23    This court found the aforementioned facts in *Coole* were analogous to the unavoidable-collision cases. *Coole*, 384 Ill. App. 3d at 400. We explained the special administrator of the decedent's estate was unable to point to any evidence supporting an inference the defendant could have avoided the accident if he had driven slower, kept a better lookout, or applied the brakes. *Coole*, 384 Ill. App. 3d at 400. The evidence presented showed the decedent pulled out in front of the defendant when he lacked sufficient time to avoid the accident regardless of any breach of duty. *Coole*, 384 Ill. App. 3d at 400.

¶ 24    In this case, Roberson testified in his deposition he was driving 5 to 10 miles under the speed limit and observed plaintiff's car substantially slow to make a left turn. He then observed a plume of dust and other material, which he assumed indicated Hancock's vehicle had hit plaintiff's vehicle. At that point, Roberson started braking. Roberson stated 2½ seconds elapsed between when he saw the plume and when he hit the back of plaintiff's car. He further explained only a second elapsed between when he saw plaintiff in his lane and his vehicle impacting plaintiff's vehicle. When he saw plaintiff's car in his lane, he locked up his brakes, and the car skidded and hydroplaned. Moreover, Roberson explained why he did not swerve. If he swerved to the left, Roberson would have hit Hancock's vehicle and/or a pickup truck sitting at the corner. If he swerved to the right, Roberson's vehicle would have gone into the ditch and may have rolled over. Hancock never saw Roberson's vehicle during the accident, and plaintiff did not know where Roberson's vehicle was when Hancock struck plaintiff's vehicle.

¶ 25    The only other evidence regarding how the accident took place was a recording of the video taken by Bone's security camera. The security camera's view is mostly of the intersection. The camera view does not show much of Old Route 66 and the crossroad beyond the intersection. The video begins with a pickup truck stopped at the intersection in the westbound lane on the crossroad. The next vehicle to come into view is plaintiff's, and it is slowing down significantly to make a left turn onto the crossroad. Before plaintiff's vehicle is completely stopped, Hancock's vehicle plows into the back of plaintiff's vehicle and creates a plume of dust and water. Plaintiff's vehicle spins into Roberson's lane and is still spinning when Roberson's vehicle impacts plaintiff's vehicle. Very little time expires between the two impacts. Roberson's vehicle comes to a complete stop shortly after hitting plaintiff's vehicle.

¶ 26    While the facts in *Coole* and the other unavoidable accident cases are different than those before us, we find Roberson's testimony and the video also set forth an unavoidable collision because Roberson did not have sufficient time to take evasive action. The differences in facts noted by plaintiff, such as the *Coole* defendant's obstructed view, the *Coole* plaintiff's contributory negligence, and Roberson's cataracts, do not alter the fact Roberson did not have an opportunity to avoid the collision. Here, Roberson, who was driving under the speed limit, applied the brakes as soon as he observed Hancock's vehicle hit plaintiff, which he testified was only 2½ seconds before his vehicle hit plaintiff's vehicle. The video does not show Roberson was speeding or going very fast as his vehicle quickly comes to a complete stop after impact. Roberson had around a second between the time plaintiff's vehicle entered his lane and the time his vehicle hit hers. He also explained why he could not have swerved, and the video supports his analysis as it shows the pickup truck, narrow shoulder, and ditch. Plaintiff has not presented any facts showing Roberson could have avoided the accident if he had driven slower, kept a

better lookout, driven more carefully, sounded his horn, or did not have cataracts. Accordingly, we find the circuit court properly concluded plaintiff cannot establish Roberson was the proximate cause of her injuries. Thus, summary judgment in Roberson's favor was proper.

¶ 27                                    III. CONCLUSION

¶ 28        For the reasons stated, we affirm the Macoupin County circuit court's judgment.

¶ 29        Affirmed.

| | |
|---|---|
| **Cite as:** | *Smith v. Hancock*, 2019 IL App (4th) 180704 |
| **Decision Under Review:** | Appeal from the Circuit Court of Macoupin County, No. 17-L-9; the Hon. April Troemper, Judge, presiding. |
| **Attorneys for Appellant:** | Ellen R. Burford, of Granite City, for appellant. |
| **Attorneys for Appellee:** | Austin T. Moore, of Hennessy & Roach, P.C., of Springfield, for appellee. |