JOSEPH ROMERO *et al.*, Plaintiffs-Appellees, v. ROBERT CISKOWSKI, Defendant-Appellant.

First District (4th Division) No. 85—234

Opinion filed October 17, 1985.

Moltz & Kessler, of Chicago (Bernard W. Moltz, of counsel), for appellant.

John M. Falasz, Jr., Ltd., of Chicago (Michael B. Kilgallon, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

The plaintiffs, Joseph Romero, Susan Romero, Monica G. Romero and Richard Romero, brought suit against defendant, Robert Ciskowski, for injuries arising out of a collision with an automobile allegedly driven by defendant in a negligent manner. During the jury

trial defendant attempted for the first time to assert an affirmative defense of statutory immunity based on the fact that defendant was a fireman. The trial court denied that motion and also denied defendant's subsequent motion for summary judgment based upon that same statute. At the end of defendant's evidence, the trial court also directed a verdict on the issue of liability in favor of plaintiffs. The jury then entered the following verdicts for plaintiffs: for Richard Romero, $1,000; for Monica G. Romero, $1,000; for Joseph Romero, $4,000; and for Susan L. Romero, $4,000.

In this appeal, defendant contends that the trial court erred in directing a verdict as to liability in favor of plaintiffs and that the trial court committed reversible error in denying his motion for summary judgment.

At trial, Joseph Romero testified that at approximately 5:30 p.m. on October 24, 1975, he was operating his motor vehicle, which was occupied by the coplaintiffs, in an easterly direction while in the curb or southernmost lane of the two eastbound lanes. At that time, he was traveling at 40 to 45 miles per hour. According to Romero, there were yield and stop signs where Route 72 intersected with Governor's Lane. These signs governed traffic on the latter roadway. Prior to impact, his wife screamed, "A car is coming." Romero then looked to his left, saw defendant's vehicle and applied the brakes. The left side of the plaintiffs' vehicle was then struck.

On cross-examination, Joseph Romero stated that prior to impact he had his eyes focused on the road ahead, and yet he did not observe defendant's vehicle at the intersection.

At this point, defense counsel attempted to file the affirmative defense of statutory immunity. Defense counsel asserted that defendant was entitled to such statutory immunity since he was a full-time fireman traveling to the firehouse near the accident to answer a fire call at the time of the collision. (See Ill. Rev. Stat. 1983, ch. 24, par. 1—4—4.) After hearing the arguments of counsel, the trial court denied defendant leave to file this affirmative defense, since the court concluded it was not timely presented.

The investigating police officer, Ronald Sperandeo, testified that Governor's Lane is an extra-wide two-lane highway and has a 25-mile-per-hour speed limit; that there is a stop sign at its intersection with Route 72 controlling traffic on Governor's Lane; and that a yield sign was present in the median near that intersection for traffic on Governor's Lane. According to the police officer's investigation of the accident debris at this location, impact occurred in the southernmost lane of Route 72, when the left front fender and grill of plaintiffs' vehicle

were damaged by the front of defendant's vehicle.

The defendant was then called by plaintiffs as an adverse witness. He admitted that immediately prior to collision he was driving on Governor's Lane, which had a 25-mile-per-hour speed limit. When he came to the stop sign, defendant looked to his right, observed no traffic approaching and then looked to his left. He then proceeded to the median, but did not stop at that location. Defendant maintained that he was not aware that there was a yield sign at the median. Defendant then proceeded through the eastbound lanes of Route 72, saw plaintiffs' oncoming vehicle, applied his brakes and attempted to stop, but the collision occurred immediately thereafter.

Susan Romero testified that she was seated in the right front passenger seat of plaintiffs' vehicle when the collision occurred. She was partly facing her husband and partly facing and talking to her children in the rear seat. According to the witness, the defendant's vehicle suddenly appeared, and she shouted that they were going to be hit. However, her husband did not have time to respond, because the collision occurred immediately thereafter. Susan Romero also stated that defendant's vehicle had no warning lights, and she did not hear defendant sound his horn before impact.

At the close of plaintiffs' case, defendant made a motion for summary judgment based upon defendant's affidavit. Defendant indicated that, when the collision took place, he was a full-time fireman and was going to the firehouse in response to a call. However, the trial court then denied this motion, stating that, at that point, there was no evidence in the record that defendant was in performance of his duties as a fireman at the time of the collision. In addition to denying defendant's motion for summary judgment, the trial court also sustained plaintiffs' motion *in limine* barring the defendant from offering the testimony of his fire chief to corroborate that at the time of the incident defendant was returning to the firehouse to assist in the fighting of a fire.

Defendant testified in his own behalf and stated that on the date in question he was a full-time fireman for the village of Hoffman Estates; that he was en route to the firehouse when the collision took place; that the aforementioned intersection was on flat land and was 150 feet from the fire station; and that Route 72 had a warning sign that the firehouse was at the intersection. Defendant further testified that when he looked from the median and observed plaintiffs' vehicle it was approximately 100 feet away. At that time, defendant was proceeding at 15 miles per hour but could not estimate the speed of plaintiffs' vehicle; however, several seconds later the impact occurred.

Defendant maintained that, although he could not recall his speed at the time of impact, he was almost stopped when the right front portion of his vehicle was struck by the left front fender of plaintiffs' vehicle.

On cross-examination, defendant stated that he did not stop at the median.

At the close of all the evidence, plaintiffs moved for a directed verdict on liability. The court noted that the police officer stated that there was a yield sign at the median; that there was a point where defendant would look in the direction of plaintiffs' vehicle; that defendant was familiar with the intersection; and that it was defendant's duty to avoid becoming involved in a collision. The trial court then sustained plaintiffs' motion for a directed finding as to negligence.

At that point, defendant unsuccessfully reiterated his motion for a directed finding pursuant to statutory immunity. The trial court then informed the jury that it had found for plaintiffs on the issue of liability and directed the jury to determine whether or not plaintiffs were damaged and whether those damages were proximately caused by defendant's negligence.

■■ Defendant contends initially that the trial court committed reversible error in denying his motion for summary judgment. Defendant points out that where an injury is caused by a member of the municipal fire department while operating an automobile in the performance of his duties as a fireman, such person shall not be liable for the injuries and damages sustained by his negligence. The injured party must bring his action against the municipality rather than the individual fireman. (Ill. Rev. Stat. 1983, ch. 24, par. 1—4—4.) Defendant maintains that his uncontroverted affidavit and his testimony demonstrate that he was in the performance of his duties as a firefighter at the time of the collision.

However, we believe, as did the trial court, that the claim of statutory immunity was not brought to the trial court's attention or the attention of the opposing party in a timely fashion. On May 18, 1976, plaintiffs' complaint was filed in the circuit court of Cook County. On June 23, 1976, defendant's answer was filed. No affirmative defenses were alleged in that answer, and no motions of any type were ever filed regarding this matter. On May 24, 1984, this case appeared on the trial calendar. On that day, a pretrial conference was held, at which time oral motions for summary judgment were presented by counsel for defendant. Thereafter, a jury was selected and trial began on May 25, 1984. On May 29, 1984, defense counsel sought leave to

file the affirmative defense based on statutory immunity. The trial court declined to allow the defense to file an affirmative defense at that time, noting that such action would result in the delay of a trial which had already started, that plaintiffs were unfairly surprised and would be prejudiced by the granting of that motion, and that defendant had filed no affirmative defense during the eight years that the case had been pending and also could not demonstrate circumstances justifying why such a long delay had occurred before seeking leave to file that defense.

A defendant may at any time move for summary judgment, and in addition an affirmative defense may be raised in the motion for summary judgment even though it was not raised in the pleadings. (See generally Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(b).) However, a failure to provide notice to the nonmovant in a reasonable amount of time so that the nonmovant can prepare a response precludes the granting of a motion for summary judgment. (See *Midwest Bank & Trust Co. v. Village of Lakewood* (1983), 113 Ill. App. 3d 962, 969, 447 N.E.2d 1358.) Under the present circumstances, we feel that the trial court acted properly when it barred defendant from filing the affirmative defense of statutory immunity.

Moreover, it must be pointed out that defendant admitted that he had no warning light illuminated or other warning device on his vehicle when he struck plaintiffs' car on Route 72. Consequently, under the present circumstances, we must conclude that there was absolutely no way any private citizen could have known that defendant was an on-duty fireman. Nor did defendant expressly demonstrate that at such time he was acting in the line of duty as a fireman, rather than merely driving to the firehouse in order to prepare to fight a fire. See generally *Hansen v. Raleigh* (1945), 391 Ill. 536, 547-48, 63 N.E.2d 851.

■ Defendant next contends that the trial court erred in directing liability in favor of plaintiffs. Defendant calls attention to the fact that the plaintiff-driver testified that he could view the northernmost portion of the intersection from 200 feet back and the median of the intersection from a distance of 150 feet; and, while his eyes focused on the roadway, he never saw the defendant's vehicle prior to the impact. Defendant maintains that failure to see what is clearly visible is incompatible with the exercise of due caution for one's safety. Defendant further asserts that where the evidence discloses a factual question regarding this plaintiff's exercise of due care, the trial court may not direct a verdict in plaintiffs' favor.

The standard for determining whether a directed verdict is proper

is whether all the evidence, when viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) A directed verdict is also proper where there is some evidence supporting the nonmovant which loses its significance when viewed in the context of all the evidence. See generally *Belleville National Savings Bank v. General Motors Corp.* (1974), 20 Ill. App. 3d 707, 712, 313 N.E.2d 631.

■ In essence, defendant argues that the plaintiff-driver failed to exercise due care in the operation of his motor vehicle in that prior to the collision he failed to see defendant's clearly visible car, and that such failure demonstrated that the plaintiff-driver failed to keep a proper lookout. However, we conclude that the overwhelming evidence in this matter does not disclose a substantial factual question as to the plaintiff-driver's possible failure to exercise due care in the operation of his motor vehicle prior to the collision.

Mr. Romero testified that he could see the area of the stop sign from 200 feet and the area of the yield sign from 150 feet. Moreover, Romero testified specifically that he observed defendant's vehicle just prior to the collision. Furthermore, we do not feel that Mr. Romero's alleged failure to see defendant at the stop sign would be significant. Plaintiff could not have reasonably anticipated that the driver of a vehicle approaching or stopped at the stop sign controlling traffic on Governor's Lane would cross both westbound lanes and cross the median in disregard of the yield sign, as here, to hit his vehicle. Defendant's assertion that plaintiff should have seen him crossing the highway from 150 feet away loses its significance when viewed in the context of all the evidence.

In *Hale v. Cravens* (1970), 129 Ill. App. 2d 466, 471-73, 263 N.E.2d 593, this court held that the parties in a vehicle on a preferential highway were entitled to a judgment notwithstanding the verdict. This court stated:

"[N]or is there anything to suggest that plaintiffs should have been alerted to the presence of defendant's vehicle or the fact that defendant might be expected to proceed onto the highway and into the path of plaintiffs' vehicle. A traveler on a preferential highway has a right to expect a car approaching along a secondary road controlled by a stop sign to obey the stop sign and yield the right-of-way as required by law." (129 Ill. App. 2d 466, 472, 263 N.E.2d 593.)

Accordingly, defendant's second contention is without merit.

For the reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

JOHNSON and McMORROW, JJ., concur.