Filed 7/28/08          NO. 4-07-0793

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

WILLIAM COOLE, as Special            )     Appeal from
Administrator of the Estate of LISA  )     Circuit Court of
COOLE, Deceased,                     )     Champaign County
          Plaintiff-Appellant,       )     No. 04L0055
          v.                         )
CENTRAL AREA RECYCLING, CENTRAL AREA )
WASTE, ALLIED TRANSPORT, INC., and   )     Honorable
BRYAN HALL,                          )     Jeffrey B. Ford,
          Defendants-Appellees.      )     Judge Presiding.
_____

JUSTICE TURNER delivered the opinion of the court:

Plaintiff William Coole, as administrator of the estate

of his deceased daughter, Lisa Coole, appeals the Champaign

County circuit court's July 2007 order, granting the motion for

summary judgment filed by defendants, Central Area Recycling;

Central Area Waste; Allied Transport, Inc.; and Bryan Hall.  On

appeal, William asserts (1) the court improperly assessed the

witnesses' credibility and weighed the evidence, (2) a jury could

find Hall negligent based upon evidence of excessive speed, (3)

expert testimony is not warranted to find Hall negligent based

upon evidence of a failure to keep a proper lookout and/or

failure to brake, and (4) the court erroneously compared the

parties' negligence.  We affirm.

I. BACKGROUND

Lisa was killed in a May 16, 1998, motor-vehicle

accident, in which a garbage truck driven by Hall and owned by

the other defendants struck her Oldsmobile sedan.  The accident

occurred around 7 a.m. at the intersection of Clayton and Duncan Avenues, which is a residential area with a speed limit of 35 miles per hour. The weather that morning was sunny and clear. Hall, who had been working for more than three hours, was in the process of delivering a garbage container and heading southbound on Duncan. Lisa had a friend, Renee Gamboa, in her car and was heading eastbound on Clayton, which had a stop sign at the intersection of Clayton and Duncan. The stop sign was located 25 to 30 feet west of the intersection. Sinda Anderson was traveling behind Lisa on Clayton and witnessed the accident.

In August 1998, William filed a complaint against defendants based on the May 1998 accident. Coole v. Central Area Recycling, No. 98-L-232 (Cir. Ct. Champaign Co.). On William's motion, the circuit court dismissed that lawsuit with prejudice and allowed William one year to refile. In March 2004, William filed this wrongful-death suit against defendants. In May 2004, defendants filed an answer to the complaint as well as the affirmative defense of comparative fault.

At an October 2006 status hearing, the trial court, pursuant to an agreement by the parties, required (1) William to disclose his experts on or before November 27, 2006, and (2) the completion of depositions of such experts by December 30, 2006. Defendants had to disclose their experts on or before January 30, 2007, and the depositions of defendants' experts were to be completed on or before March 1, 2007. The court also set the case for a jury trial in May 2007.

- 2 -

In March 2007, defendants filed a motion for summary judgment, asserting that, as a matter of law, they could not be found liable to William based on (1) Hall's use of medication, (2) Hall's alleged failure to maintain a proper lookout or to avoid the accident, (3) allegations Hall operated his vehicle at a speed greater than the speed that was reasonable and proper for the prevailing conditions, and (4) their failure to inspect and maintain the garbage truck. In support of their motion, defendants attached, inter alia, (1) Hall's May 2000 and October 2006 depositions; (2) Anderson's December 2001 deposition; (3) Dr. Timothy Roberts's December 2001 and August 2002 depositions; and (4) the October 2002 deposition of Joan Jackson, Hall's ex-wife. William filed a response, attaching, inter alia, (1) the September 2001 deposition of police officer Robert Wills, who was the first officer on the accident scene; (2) the December 2002 deposition of Gene Lewis, route supervisor for Allied Waste; (3) the May 2000 deposition of Colonel Bartley, a safety manager for Allied Waste; (4) the December 2002 deposition of Ronald Wells, a route driver for Central Area Waste; and (5) the December 2002 deposition of Kenneth Miller, a former route supervisor in Central Illinois for Allied Waste.

The testimony contained in the aforementioned depositions that is relevant to the issues on appeal is set forth below.

Hall testified that, on the morning of the accident, "a few cars were here and there" on Duncan. He was a commercial

garbage hauler and was on Duncan taking a garbage container to a customer. Hall's garbage truck was half full at the time of the accident. He estimated he saw Lisa's car two to three seconds before impact. At that point, she was going through the stop sign. He was driving somewhere between 35 and 40 miles per hour. Hall stated he hardly had time to apply the brakes and only applied them a split second before impact. He also swerved to the left to try to avoid Lisa's car. Hall denied having time to use the horn or air brake.

Hall did not have a clear view of Clayton as he was traveling south on Duncan due to trees along side the road. According to Hall, one heading southbound on Duncan could not see a vehicle traveling eastbound on Clayton until a few seconds before the intersection, which he estimated as 20 to 50 feet.

Hall further testified he did not specifically recall a car being in front of him on Duncan, but if one had been, he would have had three to four car lengths in front of him.

Anderson testified she was on a side street off of Clayton when she observed Lisa's car drive by on Clayton. As the car passed her, she observed the driver and passenger talking. Anderson turned right and got behind Lisa's car. No cars were in between them. Anderson could not recall whether she saw Lisa's brake lights but did know Lisa did not make a complete stop at the stop sign or intersection. Lisa's car was going slow at the stop sign and when she proceeded into the intersection. Anderson observed the truck change lanes to try to avoid the accident.

- 4 -

She could not determine if the truck slowed. According to Anderson, Lisa went out in front of the truck, and the truck could not avoid hitting her.

Officer Wills testified he arrived on the scene less than five minutes after the accident. Officer Wills observed indentations in the concrete where the collision appeared to have occurred. Lisa's vehicle was 120 feet to the south of the indentations. Officer Wills observed push marks but not any skid marks. The driver's side of Lisa's vehicle was collapsed inward to the point it was close to the pavement. Hall informed Officer Wills he had slowed to 35 or 40 miles per hour before the accident because of a vehicle turning in front of him.

Officer Wills stated the stop sign on Clayton was 25 to 30 feet west of the intersection. Thus, a driver stopped at the stop sign would have to travel 20 more feet to the intersection. In his opinion, a vehicle traveling southbound on Duncan that was one-eighth of a mile north of the Clayton intersection could not observe a vehicle at the stop sign on Clayton. Officer Wills noted a six-foot privacy fence obstructed a view of Clayton from Duncan. According to Officer Wills, the farthest north a person traveling south on Duncan could observe the intersection of Duncan and Clayton was 75 to 100 feet. He also stated a person southbound on Duncan could see a vehicle stopped at the stop sign 100 to 150 feet away.

Lewis testified about a safety rule referred to as the four-second rule, which requires a driver of a garbage truck to

maintain 150 to 200 feet in between the truck and the vehicle in front of it. The reason behind the rule is it takes a garbage truck longer to stop than a car. Lewis also stated it takes a garbage truck longer to stop when it is full compared to when it is empty.

An April 17, 2007, docket entry indicates the trial court chose to decide defendants' summary-judgment motion without oral argument and moved the trial date to October 1, 2007. We note also in April 2007, defendants' counsel filed 27 motions in limine, addressing trial evidence, and a motion to bifurcate the trial. On July 3, 2007, the court entered a written order, granting defendants' motion. On August 1, 2007, William filed a motion for reconsideration. On August 22, 2007, the court entered a written order, denying William's motion.

On September 18, 2007, William filed a notice of appeal from the trial court's July 3, 2007, and August 22, 2007, orders in accordance with Supreme Court Rule 303 (210 Ill. 2d R. 303).

## II. ANALYSIS

Here, William challenges the trial court's grant of summary judgment in defendants' favor.

A grant of summary judgment is only appropriate when the pleadings, depositions, admissions, and affidavits demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006); Williams v. Manchester, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 8-9 (2008). With regard to analyzing summary-judgment

- 6 -

motions, our supreme court has stated the following:

>"In determining whether a genuine issue
>as to any material fact exists, a court must
>construe the pleadings, depositions, admis-
>sions, and affidavits strictly against the
>movant and liberally in favor of the oppo-
>nent.  A triable issue precluding summary
>judgment exists where the material facts are
>disputed or where, the material facts being
>undisputed, reasonable persons might draw
>different inferences from the undisputed
>facts.  Although summary judgment can aid in
>the expeditious disposition of a lawsuit, it
>remains a drastic means of disposing of liti-
>gation and, therefore, should be allowed only
>where the right of the moving party is clear
>and free from doubt.  [Citation.]  If the
>plaintiff fails to establish any element of
>the cause of action, summary judgment for the
>defendant is proper."  <u>Williams</u>, 228 Ill. 2d
>at 417, 888 N.E.2d at 9.

Moreover, our supreme court has recognized that, if what is submitted to the trial court in support of and in response to the summary-judgment motion would have constituted all of the evidence before the court and, upon such evidence, nothing would be left to go to a jury and the court would be required to

- 7 -

direct a verdict, then a summary judgment should be entered.
Fooden v. Board of Governors of State Colleges & Universities of Illinois, 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500 (1971).  If the Fooden requirements for summary judgment are met, then summary judgment is proper even if some issue of fact exists. Koziol v. Hayden, 309 Ill. App. 3d 472, 477, 723 N.E.2d 321, 324 (1999).

We review de novo the trial court's grant of a motion for summary judgment.  See Williams, 228 Ill. 2d at 417, 888 N.E.2d at 9.

This case involves a wrongful-death action.  "[T]he representative's wrongful-death action is derived from the decedent's cause of action and is limited to what the decedent's cause of action against the defendant would have been had the decedent lived."  Williams, 228 Ill. 2d at 422, 888 N.E.2d at 11-12.  William's complaint raises a negligence claim against defendants.  To prevail in a negligence action, a plaintiff's complaint must set forth facts establishing the existence of (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by that breach. Marshall v. Burger King Corp., 222 Ill. 2d 422, 430, 856 N.E.2d 1048, 1053 (2006).

In their response to William's complaint, defendants asserted Lisa was contributorily negligent.  Section 2-1116 of the Code of Civil Procedure (735 ILCS 5/2-1116 (West 1994)) bars a plaintiff "whose contributory negligence is more than 50% of

- 8 -

the proximate cause of the injury or damage for which recovery is sought" from recovering any damages. Hobart v. Shin, 185 Ill. 2d 283, 290, 705 N.E.2d 907, 910 (1998). A plaintiff is contributorily negligent when he or she acts without the degree of care that a reasonably prudent person would have used for his or her own safety under like circumstances and that action is the proximate cause of his or her injuries. Basham v. Hunt, 332 Ill. App. 3d 980, 995, 773 N.E.2d 1213, 1226 (2002). Generally, the issue of contributory negligence is a question of fact for the jury, but it does become a question of law "when all reasonable minds would agree that the evidence and the reasonable inferences therefrom, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." Basham, 332 Ill. App. 3d at 995, 773 N.E.2d at 1226.

A. Witness Credibility and the Weighing of Evidence

We first note William's argument the trial court assessed the witnesses' credibility and weighed evidence in ruling on the summary-judgment motion.

With a summary-judgment motion, the trial court does not decide a question of fact but, rather, determines whether one exists. Thus, a court cannot make credibility determinations or weigh evidence in deciding a summary-judgment motion. AYH Holdings, Inc. v. Avreco, Inc., 357 Ill. App. 3d 17, 31, 826 N.E.2d 1111, 1124 (2005).

We note that, in its order on William's motion to

- 9 -

reconsider, the trial court denied assessing credibility and weighing the evidence.  However, even if William's contention is correct, he cites no authority that reversal is necessary for such an error.  Our review of a ruling on a summary-judgment motion is <u>de</u> <u>novo</u> (see <u>Williams</u>, 228 Ill. 2d at 417, 888 N.E.2d at 9), and thus we are examining the depositions and pleadings anew to determine whether a material question of fact exists.  No deference is given to the trial court's ruling.  <u>Interior Crafts, Inc. v. Leparski</u>,  366 Ill. App. 3d 1148, 1151, 853 N.E.2d 1244, 1247 (2006).  Moreover, "we may affirm a trial court's grant of summary judgment on any basis appearing in the record."  <u>State Automobile Mutual Insurance Co. v. Habitat Construction Co.</u>, 377 Ill. App. 3d 281, 291, 875 N.E.2d 1159, 1168 (2007).  Accordingly, since we are reviewing the issue anew, William's alleged error would not itself warrant reversal of the trial court's grant of summary judgment, and we decline to address its merits.

### B. Negligence

William contends a jury could find Hall was negligent based upon evidence of excessive speed and failure to keep a proper lookout and/or brake.  He contends Hall's admission he was traveling up to five miles per hour over the speed limit before the accident is <u>prima</u> <u>facie</u> evidence of negligence.  However, while a statutory violation is <u>prima</u> <u>facie</u> evidence of negligence, that fact itself does not create liability, as the statutory violation must have been the direct and proximate cause of the injury before liability will exist.  <u>Ney v. Yellow Cab Co.</u>, 2

- 10 -

Ill. 2d 74, 78-79, 117 N.E.2d 74, 78 (1954); see also Kalata v. Anheuser-Busch Cos., 144 Ill. 2d 425, 434-35, 581 N.E.2d 656, 661 (1991). Moreover, even if the facts show Hall breached his duty to keep a proper lookout and/or brake, William still had to show that breach was the proximate cause of Lisa's injury. See Guy v. Steurer, 239 Ill. App. 3d 304, 309-10, 606 N.E.2d 852, 856 (1992) ("A driver's failure to observe speed appropriate to conditions and maintain a proper lookout, or any other acts or omissions, do not render that driver negligent if those acts are not the proximate cause of a plaintiff's injuries").

The proximate-cause element consists of two separate requirements: cause in fact and legal cause. City of Chicago v. Beretta U.S.A. Corp., 213 Ill. 2d 351, 395, 821 N.E.2d 1099, 1127 (2004). Cause in fact exists "'when there is a reasonable certainty that a defendant's acts caused the injury or damage.'" City of Chicago, 213 Ill. 2d at 395, 821 N.E.2d at 1127, quoting Lee v. Chicago Transit Authority, 152 Ill. 2d 432, 455, 605 N.E.2d 493, 502 (1992). In deciding the aforementioned issue, courts first address "whether the injury would have occurred absent the defendant's conduct." City of Chicago, 213 Ill. 2d at 395, 821 N.E.2d at 1127. Additionally, when multiple factors may have combined to cause the injury, we must consider whether the "defendant's conduct was a material element and a substantial factor in bringing about the injury." City of Chicago, 213 Ill. 2d at 395, 821 N.E.2d at 1127. As to legal cause, we assess foreseeability and consider "whether the injury is of a type that

- 11 -

a reasonable person would see as a likely result of his conduct." City of Chicago, 213 Ill. 2d at 395, 821 N.E.2d at 1127. While proximate causation generally presents a question of fact, a court may determine the lack of proximate cause as a matter of law "where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause." City of Chicago, 213 Ill. 2d at 395-96, 821 N.E.2d at 1127-28.

Courts have recognized an "unavoidable collision." In such cases the driver on the preferential road is without proximate cause, and the driver's acts or omissions in breach of a duty are not material. Guy, 239 Ill. App. 3d at 310, 606 N.E.2d at 856. In cases where the reviewing court has concluded an accident was unavoidable, the courts have found the following:

> "[T]he motorist on the preferential road had the right to expect that the vehicle approaching on the secondary road controlled by a stop sign would obey the stop sign and yield the right-of-way. When the motorist drove into the path of the preferential driver, the circumstances afforded no opportunity to avoid the collision." Guy, 239 Ill. App. 3d at 309, 606 N.E.2d at 856 (citing Salo v. Singhurse, 181 Ill. App. 3d 641, 643, 537 N.E.2d 339, 341 (1989), First National Bank of Geneva v. Douell, 161 Ill. App. 3d 158, 161-62, 514 N.E.2d 238, 240

- 12 -

(1987), <u>Romero v. Ciskowski</u>, 137 Ill. App. 3d 529, 534, 484 N.E.2d 1150, 1154 (1985), <u>Marsh v. McNeill</u>, 136 Ill. App. 3d 616, 619-20, 483 N.E.2d 595, 597-98 (1985)).

"An unavoidable collision normally occurs when a motorist is confronted with a sudden swerve into his right-of-way by an approaching vehicle." <u>Guy</u>, 239 Ill. App. 3d at 310, 606 N.E.2d at 856. In such cases, the driver lacks sufficient time to react and take evasive action. <u>Guy</u>, 239 Ill. App. 3d at 310, 606 N.E.2d at 856.

In <u>Johnson v. May</u>, 223 Ill. App. 3d 477, 484-85, 585 N.E.2d 224, 229 (1992), the reviewing court found an unavoidable collision on the part of the plaintiff-preferential driver and reversed the jury's finding the preferential driver 50% at fault. There, the defendant stopped at the intersection because he had a stop sign but then pulled out in front of the preferential driver. <u>Johnson</u>, 223 Ill. App. 3d at 484, 585 N.E.2d at 229. The <u>Johnson</u> court found the preferential driver, who was driving a tractor-trailer loaded with coal at or near 55 miles per hour, had only 162 feet to stop after the defendant pulled forward into the intersection and could not stop in such short a distance. <u>Johnson</u>, 223 Ill. App. 3d at 484-85, 585 N.E.2d at 229. Thus, even if the preferential driver had kept a better lookout, the collision still would have taken place. <u>Johnson</u>, 223 Ill. App. 3d at 485, 585 N.E.2d at 229.

William does not directly address proximate causation

- 13 -

or its two elements in his initial brief. When discussing excessive speed, William does assert that, if Hall had been driving the speed limit, he "would have had over 22 feet more distance to stop and/or make evasive maneuvers that would have limited the immensely destructive nature of the fatal impact." However, William cites no evidence that would allow an inference that an extra 22 feet would have allowed Hall to stop the heavy garbage truck or maneuver around Lisa's vehicle.

In contending the trial court should not have compared the parties' negligence, William points out Hall's testimony he observed Lisa's car two to three seconds before impact. Thus, he argues, based on three seconds, Hall had around 177 feet to stop or maneuver the garbage truck after first seeing Lisa. However, that calculation ignores reaction time, which, in Illinois, has been found to be "at least a second." Johnson, 223 Ill. App. 3d at 484, 585 N.E.2d at 229, citing Seeds v. Chicago Transit Authority, 342 Ill. App. 303, 306-07, 96 N.E.2d 646, 648 (1950), dismissed in part and rev'd in part on other grounds, 409 Ill. 566, 101 N.E.2d 84 (1951). Accordingly, Hall would have had less than 118 feet to stop a half-loaded garbage truck. Again, William fails to point to any evidence that would support an inference a half-loaded garbage truck could be stopped in such a short distance or at what speed the truck would have to have been going to stop in that distance. Moreover, William even fails to argue what Hall could have done to avoid the accident if he had kept a proper lookout.

In his reply brief, William does expressly address proximate causation. He asserts this case is analogous to Turner v. Roesner, 193 Ill. App. 3d 482, 493, 549 N.E.2d 1287, 1294 (1990), where the Second District, with one judge dissenting, reversed the trial court's grant of summary judgment in the defendant's favor. There, the defendant was driving completely within his own lane at 45 miles per hour, which was 10 miles per hour less than the speed limit. Turner, 193 Ill. App. 3d at 487, 549 N.E.2d at 1290-91. Due to darkness and fog, visibility was poor, and the defendant admitted his visibility was limited to only that distance which was illuminated by his headlights. Turner, 193 Ill. App. 3d at 485, 489, 549 N.E.2d at 1289, 1292. At some point, another vehicle crossed the centerline and entered into the defendant's lane. Turner, 193 Ill. App. 3d at 485, 549 N.E.2d at 1289. "The defendant had about 2 seconds and 120 feet to react." Turner, 193 Ill. App. 3d at 487, 549 N.E.2d at 1291. The defendant responded by taking his foot off the accelerator but did not remember braking. He also did not attempt to drive into the other lane or onto the shoulder of the road. Turner, 193 Ill. App. 3d at 487, 549 N.E.2d at 1291.

Regarding the cause-in-fact requirement of proximate cause, the Turner court found "a reasonable jury could find that, but for the defendant's failure to drive at a speed which would have allowed him to stop in time, the collision would not have occurred." Turner, 193 Ill. App. 3d at 490, 549 N.E.2d at 1292-93. Moreover, while the defendant's conduct was certainly not

- 15 -

the sole cause of the collision, a reasonable jury could have concluded the speed of the defendant's truck was a substantial factor in causing the accident. Turner, 193 Ill. App. 3d at 490, 549 N.E.2d at 1293.

In distinguishing Walling v. Lingelbach, 65 Ill. 2d 244, 357 N.E.2d 530 (1976), Young v. Texas Eastern Transmission Corp., 137 Ill. App. 3d 35, 484 N.E.2d 325 (1985), and Rutter v. Gemmer, 153 Ill. App. 3d 586, 505 N.E.2d 1308 (1987), all of which affirmed a summary judgment or reversed a jury verdict based on no proximate cause, the Turner court found the holdings in those cases resulted from the plaintiffs' failure to present sufficient evidence from which one could infer the defendant's conduct was a proximate cause of the accident. Turner, 193 Ill. App. 3d at 491, 549 N.E.2d at 1293. It specifically addressed the facts of the Walling case, noting the defendant there was still able to react to the presence of an oncoming automobile in her lane by veering onto the shoulder but could not avoid the collision. Turner, 193 Ill. App. 3d at 491, 549 N.E.2d at 1293. On the other hand, in Turner, the defendant's own deposition supported an inference he was driving at such a speed he could not even attempt to avoid a collision with a vehicle stopped in his lane once it came into view. Turner, 193 Ill. App. 3d at 491-92, 549 N.E.2d at 1293-94.

William contends that, like Turner, a jury could conclude that but for Hall's failure to travel at the speed limit, to travel at a reasonable speed for the conditions, to

- 16 -

keep a proper lookout and/or brake, the collision would not have occurred. However, William's assertion is conclusory as he again fails to point to any evidence or reasonable inference in support of his assertion. Additionally, we note both Hall and Anderson indicated Hall changed lanes in an attempt to avoid the collision. Thus, the Turner court's reason for distinguishing Walling would not apply in this case.

Here, the parties have taken discovery over many years and nothing indicates any additional evidence could be presented at a trial. Despite the lengthy discovery, William is unable to point to any evidence supporting an inference Hall could have avoided the accident if he would have been driving slower, had been keeping a better lookout, or had applied the brakes. This case is analogous to the unavoidable-collision cases. Based on the evidence William has argued to us, Lisa pulled out in front of Hall when he did not have a sufficient time to avoid the accident regardless of any breach of duty. Unlike Turner, we find a reasonable jury could not find that but for Hall's excessive speed, failure to keep a proper lookout, and failure to brake, the collision would not have occurred. Even if a reasonable jury could reach that conclusion, it could not find Hall's breach of any duty was a substantial factor in causing the fatal collision. Thus, a trial court would have to direct a verdict for defendants. Accordingly, this case satisfies the Fooden requirements, and the trial court properly entered summary judgment. See Koziol, 309 Ill. App. 3d at 477, 723 N.E.2d at

324-25.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's grant of summary judgment in defendants' favor.

Affirmed.

COOK and STEIGMANN, JJ., concur.